UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LEOPONA, INC. (d/b/a AUDIOSOCKET), a Delaware corporation; SARAH SCHACHNER, a California resident; and BRAD COUTURE, a New Hampshire resident,<br><br>          Plaintiffs,<br><br>   v.<br><br>CRUZ FOR PRESIDENT, a Texas nonprofit coporation; and MADISON MCQUEEN, a California limited liability company,<br><br>          Defendants. | CASE NO. C16-0658RSM<br><br>ORDER DENYING DEFENDANTS' MOTION TO DISMISS |

## I.    INTRODUCTION

This matter comes before the Court on Defendants' Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(6), 12(c) and/or 12(f). Dkt. #4. Defendants argue that Plaintiffs' claims fail as a matter of law because: 1) Plaintiffs do not allege their copyrights are valid, and offer no information about their filings with the U.S. Copyright Office; 2) Plaintiffs cannot support their claim for liquidated damages; 3) Plaintiffs' contract claims are preempted by the Copyright Act; and 4) Plaintiffs' request for an injunction is moot. *Id.* Plaintiffs oppose the motion, arguing that they have met the liberal pleading standards under Rule 12(b)(6) and related case law, and no alternative Rule permits dismissal of the Complaint at this stage of the

ORDER
PAGE - 1

proceedings. Dkt. #7. For the reasons set forth below, the Court agrees with Plaintiffs and DENIES Defendants' motion to dismiss.

## II. BACKGROUND

This copyright infringement/breach of contract matter arises from the use of certain musical compositions used in ads run by the Presidential campaign for Ted Cruz. Dkt. #1. For purposes of this motion, Defendants have accepted the following allegations by Plaintiffs as true. Dkt. #4 at 3.

On September 17, 2015, an employee of the advertising company Madison McQueen, Robert Perkins, downloaded an Audiosocket-licensed music track called "Lens," which was created by Sarah Schachner. Ms. Schachner has filed a US copyright application for the "Lens" music composition and sound recording. Dkt. #1 at ¶ 20. On December 23, 2015, Defendant Madison McQueen entered into Audiosocket's standard Small Business License Agreement. Under the License Agreement, Madison McQueen agreed to use "Lens" for the limited permitted purposes outlined in that Agreement. *Id.* at ¶ 21. The License Agreement contained permitted uses and restrictions on use of the "Lens" composition and sound recording. *Id.* at ¶ 22. The Agreement expressly prohibited Madison McQueen from using "Lens":

> 1. In any broadcast, cable, web television, video games, mobile applications, or radio;
>
> . . .
>
> 3. For political purposes (including, but not limited to, supporting or opposing any government policy, government official, political action, or candidate for political office).

*Id.* at ¶ 23. Madison McQueen also agreed to pay liquidated damages of $25,000 for any breach of the Agreement. *Id.* at ¶ 24.

ORDER
PAGE - 2

Prior to filing the instant lawsuit, Audiosocket confirmed that three days after entering into the License Agreement, and despite the agreement not to use "Lens" for any political purposes, Defendants Cruz for President ("Cruz") and Madison McQueen began broadcasting "Victories," an acclaimed political ad promoting and supporting U.S. Presidential candidate Ted Cruz, on YouTube. The political ad used "Lens" as its soundtrack throughout the entirety of the video. Dkt. #1 at ¶ 25. Audiosocket also confirmed that "Victories" used Audiosocket's unique watermarked version of "Lens," which reveals that it was the licensed version downloaded by Mr. Perkins. The "Victories" video has been viewed over 78,000 times on YouTube. *Id.* at ¶ 26.

On February 24, 2016, nearly two months after Madison McQueen and Cruz first went live with their unauthorized political use of "Lens," but before they broadcast "Lens" on cable television, Madison McQueen admitted it had no right to use "Lens" on cable television. Although Audiosocket advised Madison McQueen that political use of "Lens" was not approved, Madison McQueen ignored the restriction and proceeded to cause "Lens" to be broadcast on cable channel Fox Business News no fewer than 86 times. *Id.* at ¶ 27.

On September 17, 2015, Mr. Perkins downloaded an Audiosocket-licensed song called "Fear of Complacency," which was created by Brad Couture. Mr. Couture has filed a U.S. copyright application for the "Fear of Complacency" sound recording and music composition. *Id.* at ¶ 28. On January 25, 2016, Defendant Madison McQueen, entered into another Small Business Licensing Agreement with Audiosocket. Under that Licensing Agreement, Madison McQueen agreed to use "Fear of Complacency" for the limited permitted purposes outlined in the Agreement. Dkt. #1 at ¶ 29. That License Agreement contained the same permitted uses and restrictions as the "Lens" License Agreement, including that Madison McQueen was expressly prohibited from publishing or performing "Fear of Complacency" for political purposes,

ORDER
PAGE - 3

including, but not limited to, supporting or opposing any government policy, government official, political action, or candidate for political office. Dkt. #1 at ¶ 30. Madison McQueen also agreed to pay liquidated damages of $25,000 for any breach of the "Fear of Complacency" License Agreement. *Id.* at ¶ 31.

Prior to filing the instant lawsuit, Audiosocket confirmed that on January 24, 2016, Defendants Cruz and Madison McQueen began broadcasting on YouTube a political commercial for candidate Cruz entitled "Best to Come," which used "Fear of Complacency" as its soundtrack. Audiosocket also confirmed that "Best to Come" used Audiosocket's unique watermarked version of "Fear of Complacency," which reveals that it was the licensed version downloaded by Mr. Perkins. The "Best to Come" video has been viewed over 12,000 times on YouTube. *Id.* at ¶ 32.

The instant law suit followed, and Defendants have now moved to dismiss it.

### III.    DISCUSSION

**A. Federal Rule of Civil Procedure 12(c)**

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). As an initial matter, the Court DENIES Defendants' motion to the extent that it was brought under this Rule. As Defendants should be aware, such a motion is premature given that no Answer has been filed in this matter. *Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir. 2005) (holding that Rule 12(c) motion is premature if no answer has been filed). Thus the Court turns to Defendants' motion under 12(b)(6).

**B. Federal Rule of Civil Procedure 12(b)(6)**

ORDER
PAGE - 4

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). However, the Court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678. This requirement is met when the Plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Absent facial plausibility, Plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

Though the Court limits its Rule 12(b)(6) review to allegations of material fact set forth in the Complaint, the Court may properly take judicial notice of facts not subject to reasonable dispute. *See* FRE 201(b). Here, the Court takes judicial notice of the fact that Ted Cruz suspended his Presidential campaign on or about May 4, 2016. Dkt. #4 at 7 fn. 20.

*1. Plainitffs Schachner's and Couture's Copyright Claims*

Defendants first argue that Plaintiffs Schachner and Couture have failed to allege facts sufficient to support their copyright infringement claims. Dkt. #4 at 9-11. Specifically, Defendants argue that Plaintiffs Schachner and Couture fail to allege sufficient facts to prove ownership of a valid copyright. Dkt. #4 at 10. The Ninth Circuit Court of Appeals has expressly held that "receipt by the Copyright Office of a complete application satisfies the registration requirement of § 411(a)." *Cosmetic Ideas, Inc. v. IAC/InteractiveCorp*, 606 F.3d 612, 621 (9th Cir. 2010). Defendants have accepted for purposes of this motion that Ms. Schachner and Mr. Couture filed U.S. Copyright applications; however, they complain that

ORDER
PAGE - 5

Plaintiffs have failed to allege or otherwise demonstrate that the U.S. Copyright Office received those applications. Dkt. #4 at 3, 5 and 10. The Court is not persuaded by this argument, and agrees with Plaintiffs that Defendants are attempting to improperly broaden settled pleading principles through their motion. *See* Dkt. #7 at 9-11.

Ms. Schachner and Mr. Couture specifically pleaded that they are the sole owners of their respective sound recordings and copyrights, and that they have filed US copyright applications. Dkt. #1 at ¶ ¶ 20, 28, 44 and 49. The Court agrees that the only reasonable inference from those allegations is that the Copyright Office has received those applications. This is because, as Plaintiffs point out, a copyright application may only be filed with the Copyright Office, and filing with the Copyright Office is the only way one can complete the application process. Thus, the Court rejects Defendants argument that Plaintiffs Schachner and Couture have failed to allege facts sufficient to support their copyright claims at this stage of the proceedings.

   2. *Audiosocket's Request for Liquidated Damages*

Defendants next argue that Plaintiff Audiosocket has failed to allege facts sufficient to support its ultimate request for liquidated damages. Dkt. #4 at 11-13. Defendants argue that Audiosocket unreasonably claims more than $2 billion in damages and fails to support the request by attaching the contract to the Complaint or by quoting the liquidated damages language. *Id.* The Court finds this argument disingenuous.

First, Defendants have admitted for purposes of this motion that Madison McQueen agreed to pay liquidated damages of $25,000 for any breach of the License Agreements. Dkt. #4 at 4 and 6. Second, Defendants misconstrue the posture of this matter and the applicable standard at this stage of the proceedings. Plaintiffs assert that they are not seeking $2 billion in

damages, and acknowledge that they must prove an amount of damages later in this litigation. Dkt. #7 at 17-19. At this stage of the proceedings, however, all that is necessary is that Plaintiffs have pleaded a plausible claim. They have done so. Plaintiffs pleaded, and Defendants accept as true, that Madison McQueen agreed to pay liquidated damages for a breach of the contract it entered into. Nothing in the pleadings demonstrates to the Court at this time that such a clause would be unenforceable. Moreover, the Court will not limit the damages claim in any way at this time. *See* Dkt. #4 at 13-14. The amount of damages will require a factual inquiry and determination as to how many breaches occurred. Accordingly, Defendants' arguments with respect to liquidated damages will also be rejected.

   *3. Copyright Act Preemption*

Defendants next argue that the Copyright Act preempts Audiosocket's contract claims. Dkt. #4 at 15-18. The Court disagrees. Express preemption under § 301(a) involves a two-part analysis. The Court must first "determine whether the 'subject matter' of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103." *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2006). If it does, the Court must then assess "whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders." *Id.* To survive preemption, the "state claim must have an extra element which changes the nature of action." *Id.* at 1144 (quoting *Del Madera Props. v. Rhodes & Gardner*, 820 F.2d 973, 977 (9th Cir.1987)). Courts "take a restrictive view of what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim." *See Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004) (holding that § 301(a) preempted an unjust enrichment claim based on the defendant's adaptation of a copyrighted screenplay and

ORDER  
PAGE - 7

book into a motion picture). That the claim has additional elements does not save it from preemption as long as it is, in essence, a copyright claim. *Laws*, 448 F.3d at 1144.

The parties primarily focus on the second part of the analysis. As Plaintiffs highlight, the exclusive rights of copyright owners granted by Congress under 17 U.S.C. § 106 of the Copyright Act may only be enforced by an owner or *exclusive* licensor of the right. 17 U.S.C. § 501 (b) (providing that "the legal or beneficial owner of exclusive right under copyright is entitled . . . to institute an action for any infringement"); *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1150 (9th Cir. 2008) (citations omitted). Plaintiffs have alleged in their Complaint that Audiosocket is not an owner or exclusive licensor of the right to the "Lens" and "Fear of Complacency" works. Dkt. #1 at ¶ 8. Rather, Audiosocket is a music promotion, distribution and licensing service for owners of copyrights and those who wish to locate and use copyrighted music. *Id.* Thus, Audiosocket has no standing to bring a copyright claim and its only remedy for the alleged contract breaches is to bring the contract claims it has pleaded in the Complaint. Moreover, the copyright owners, Ms. Schachner and Mr. Couture, have not brought any contract claims with their copyright claims.

Defendants argue that Audiosocket's claims arise from Ms. Schachner's and Mr. Couture's copyright rights, and are therefore in essence copyright infringement claims. Dkt. #8 at 7-11. But this misconstrues preemption law. Indeed, in one of the cases on which they rely, *Del Madera Props. v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 976 (9th Cir. 1987), the Ninth Circuit Court of Appeals found the state law claims to be preempted because the copyright holder brought <u>both</u> copyright infringement claims and separate state law claims, but could not demonstrate any "extra element" that would distinguish their state law claims from the copyright claims.

ORDER
PAGE - 8

The instant case is distinguishable. The Ninth Circuit has found in other licensing agreement actions that preemption does not apply. For example, in *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079 (9th Cir. 2005), the plaintiff manufactured semiconductor chips which customers, using the plaintiff's software, could program to perform various logic functions. *Id.* at 1081-82. In order to use the software, customers agreed to the terms of a license agreement that limited the use of the software to "the sole purpose of programming logic devices manufactured by [the plaintiff] and sold by [the plaintiff] or its authorized distributors[.]" *Id.* at 1082. Customers using the plaintiff's software created a bitstream, a file containing information on the chip's use. *Id.* The defendant was a competing manufacturer of semiconductor chips, but used a different business model. *Id.* Rather than using its own software to program customers' chips, the defendant asked its customers to use the plaintiff's software and send the bitstream to the defendant, which the defendant then used to create a chip that was compatible with the plaintiff's products. *Id.* The plaintiff asserted, among others, a copyright infringement claim and a state law claim of intentional interference with contractual relations. *Id.* The latter claim was based on the plaintiff's allegation that the defendant caused customers to use the plaintiff's software in violation of the license agreement by providing the bitstream to the defendant. *Id.* at 1089.

The Ninth Circuit held that the Copyright Act did not preempt the plaintiff's intentional interference with contract claim. *Id.* at 1089. Specifically, the Court explained:

> Most courts have held that the Copyright Act does *not* preempt the enforcement of contractual rights. *See Bowers*, 320 F.3d at 1324-25 (noting that "most courts to examine this issue have found that the Copyright Act does not preempt contractual constraints on copyrighted articles"); *Nat'l Car Rental Sys., Inc. v. Computer Assocs. Int'l*, 991 F.2d 426, 431 (8th Cir. 1993) ("National's use of the licensed programs constitutes an extra element in addition to the copyright rights making this cause of action qualitatively different from an action for copyright."); *ProCD, Inc. v. Zeidenberg*, 86 F.3d

ORDER
PAGE - 9

> 1447 (7th Cir. 1996) (noting that "courts usually read preemption clauses to leave private contracts unaffected"). We find the logic of these cases persuasive here.
>
> In *ProCD*, the Seventh Circuit considered a situation similar to the circumstances of this case.  A consumer purchased ProCD's software and used it in a manner contrary to the terms of the shrinkwrap license; he put the information on a website and made it available to companies at a fee lower than ProCD's rate, although the terms of the license allowed only for private use.  86 F.3d at 1454-55.  Likewise, Altera's customers use software to create a bitstream (which is essentially information) and provide that information to Clear Logic, despite the terms of the agreement that restrict the customers to using that information for programming Altera products.  The right at issue is not the reproduction of the software as Clear Logic argues, but is more appropriately characterized as the use of the bitstream.  Similarly, the Eighth Circuit distinguished between use and reproduction in *National Car Rental Systems*, 991 F.2d at 432, specifically holding that use is a qualitatively different right.  *Id.*
>
> We find these cases compelling.  A state law tort claim concerning the unauthorized use of the software's end-product is not within the rights protected by the federal Copyright Act, and accordingly, we affirm the district court's ruling rejecting preemption.

*Altera*, 424 F.3d at 1089-1090 (emphasis in original).  In sum, the court determined that the heart of the state claim was a licensing violation rather than a copyright violation.

Likewise, in *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 957 (9th Cir. 2010), *as amended on denial of reh'g* (Feb. 17, 2011), *opinion amended and superseded on denial of reh'g*, 2011 U.S. App. LEXIS 3427, 2011 WL 538748 (9th Cir. Feb. 17, 2011), the Ninth Circuit Court of Appeals rejected a preemption argument.  *MDY Industries* involved a license agreement which prohibited users of an online computer game from using robots or "bot" to play the game.  *Id.* at 938.  The defendant, the game's creator, filed a countersuit against the plaintiff, a distributor of a software bot that played early levels of the game, and alleged copyright infringement and tortious interference with a contract.  *Id.* at 935-36.  The court concluded:

ORDER
PAGE - 10

>we have previously addressed a similar tortious interference cause of action under California law and found it not preempted. *See Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089-90 (9th Cir. 2005). In so holding, we relied on the Seventh Circuit' analysis in *ProCD*, 86 F.3d 1447, which explained that because contractual rights are not equivalent to the exclusive rights of copyright, the Copyright Act's preemption clause usually does not affect private contracts. *Altera*, 424 F.3d at 1089; *see ProCD*, 86 F.3d at 1454 ('A copyright is a right against the world. Contracts, by contrast, generally affect only their parties; strangers may do as they please, so contracts do not create 'exclusive rights.'). The Fourth, Fifth, and Eighth Circuits have also held that the Copyright Act does not preempt a party's enforcement of its contractual rights. *See Nat'l Car Rental Sys., Inc. v. Comp. Assoc. Int'l, Inc.*, 991 F.2d 426, 433 (8th Cir. 1993); *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir. 1990); *Acorn Structures, Inc. v. Swantz*, 846 F.2d 923, 926 (4th Cir. 1988).
>
>This action concerns the anti-bot provisions of ToU § 4(b)(ii) and (iii), which we have held are contract-enforceable covenants rather than copyright-enforceable conditions. We conclude that since Blizzard seeks to enforce contractual rights that are not equivalent to any of its exclusive rights of copyright, the Copyright Act does not preempt its tortious interference claim. *Cf. Altera*, 424 F.3d at 1089-90.

*MDY Indus.*, 629 F.3d at 957.

This Court finds that the reasoning of *Altera Corporation* and *MDY Industries* is applicable in the instant action. In both of those cases, the Ninth Circuit found the contractual rights at issue to be qualitatively different and not the equivalent of a copyright infringement claim; thus, the Copyright Act did not preempt such state law claims. *See Altera Corp.*, 424 F.3d at 1089; *MDY Indus.*, 629 F.3d at 957; 17 U.S.C. § 106. In this case, Audiosocket seeks to hold Defendants liable for alleged breaches of their Licensing Agreements, specifically the use of the musical compositions for political purposes and cable television ads, both of which were prohibited by the Agreements. For the reasons discussed above, the Court is not convinced that such claims are preempted by the Copyright Act.

///

///

ORDER
PAGE - 11

*4. Plaintiffs' Claim for Injunctive Relief*

Finally, Defendants argue that Plaintiffs' claim for injunctive relief is moot because the Cruz campaign is over. Dkt. #4 at 18-20. The Court does not agree. Plaintiffs have alleged that: 1) Defendants *caused* the advertisements at issue to be played on YouTube; 2) those ads continue to be available "live" to this day; and 3) "Victories" remains as a "Featured Video" on the home page for Cruz for President website. Dkt. #1 at ¶ ¶ 26 and 32. The fact that Senator Cruz has suspended his Presidential campaign does not change Plaintiffs' allegation that Defendants are responsible for the continued use of the musical compositions in ads that remain accessible to the public. Thus, the Court will not dismiss that portion of Plaintiffs' complaint seeking injunctive relief at this time.

For all of these reasons, the Court DENIES Defendants' motion under Rule 12(b)(6) and turns to Defendants' motion under Rule 12(f).

**C. Federal Rule of Civil Procedure 12(f)**

Under Federal Rule of Civil Procedure 12(f), the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The function of a 12(f) motion is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial. *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994). Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded, and impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question. *Id.* Motions to strike are disfavored and should not be granted unless "it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *In re New*

*Century*, 588 F. Supp. 2d 1206, 1220 (C.D. Cal. 2008).  Courts will not grant motions to strike unless "there are no questions of fact, . . . any questions of law are clear and not in dispute, and . . . under no set of circumstances could the claim or defense succeed." *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 561 (C.D. Cal. 2005).  For the reasons discussed above, Defendants have failed to persuade the Court that it should strike any material from the Complaint and therefore the Court DENIES the motion to the extent it was brought under this Rule.

## IV.     CONCLUSION

Having reviewed Defendants' Motion to Dismiss, Plaintiffs' Opposition thereto and Defendants' Reply in support thereof, along with the remainder of the record, the Court hereby ORDERS that Defendants' Motion to Dismiss (Dkt. #4) is DENIED for the reasons discussed above.

DATED this 11th day of July, 2016.

_____
RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE